**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| NATIONAL INDEMNITY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: |
| MR. MESSENGER INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**COMPLAINT FOR BREACH OF CONTRACT**

Plaintiff, National Indemnity Company ("National Indemnity"), by and through its undersigned counsel, brings this Complaint for Breach of Contract against Defendant Mr. Messenger Inc. ("Mr. Messenger"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for breach of contract arising from a contract of insurance that was issued by National Indemnity to Mr. Messenger.  Mr. Messenger breached the contract of insurance by failing to pay all premium due and owing National Indemnity.

2.      Specifically, National Indemnity issued Commercial Auto Policy 70 TRB 001540 to Named Insured Mr. Messenger Inc. for the period July 6, 2016 – July 6, 2017 (the "2016 Policy") and also issued Commercial Auto Policy 70 TRB 002031 to Named Insured Mr. Messenger Inc. for the period July 6, 2017 to July 6, 2018 which was cancelled effective April 4, 2018 (the "2017 Policy") (collectively the "Policies").

3.      The Policies were issued on the condition of and subject to a premium audit upon expiration of each policy to determine the actual hired auto exposure for purposes of calculating the final premium due.

4.      In accordance with the terms and conditions of the 2016 Policy, beginning late March 2018, National Indemnity audited the hired auto exposure based on the information and records provided by Mr. Messenger, and the rate set forth in the Policy.

5.      On or about July 23, 2018, National Indemnity issued a Report of Audit to Mr. Messenger indicating additional premium of $174,575 due and owing by Mr. Messenger for the 2016 Policy.

6.      On or about August 22, 2018, Mr. Messenger advised National Indemnity that it disputed National Indemnity's audit and amount claimed by National Indemnity for additional premium due.

7.      Despite multiple communications by National Indemnity requesting that Mr. Messenger pay the premium amount due and owing to National Indemnity, Mr. Messenger has refused, thereby breaching the terms of the 2016 Policy.

8.      Mr. Messenger also breached the terms of the 2017 Policy.

9.      In accordance with the terms and conditions of the 2017 Policy, National Indemnity audited the hired auto exposure based on the information and records provided by Mr. Messenger, and the rate set forth in the Policy.

10.     On or about  March 26, 2019, National Indemnity issued a Report of Audit to Mr. Messenger indicating additional premium of $117,203 due and owing by Mr. Messenger for the 2017 Policy.

11.     On or about June 27, 2019, Mr. Messenger advised National Indemnity that it disputed National Indemnity's audit.

12.     Despite multiple communications by National Indemnity requesting that Mr. Messenger pay the premium amount due and owing to National Indemnity, Mr. Messenger has refused, thereby breaching the terms of the 2017 Policy.

13.     National Indemnity has performed and satisfied all conditions, covenants, and promises to be performed on its part with respect to the Policy.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

15.     Venue is proper in this district under 28 U.S.C. §1446(a) because the United States District Court for the District of Rhode Island is the judicial district where the Policies were issued, and where defendant Mr. Messenger is incorporated.

## PARTIES

16.     National Indemnity Company is a corporation incorporated under the laws of the State of Nebraska and has is its principal place of business in Omaha, Nebraska, and therefore is a citizen of the State of Nebraska.   At all relevant times, National Indemnity was duly authorized to issue insurance policies in the State of Rhode Island.

17.     Defendant Mr. Messenger Inc. is a corporation incorporated under the laws of the State of Rhode Island and has its principal place of business in Warwick, Rhode Island, and therefore is a citizen of the State of Rhode Island.

## THE POLICIES

18.     National Indemnity issued Commercial Auto Policy 70 TRB 001540 to Named Insured Mr. Messenger Inc. for the period July 6, 2016 – July 6, 2017 (the "2016 Policy). A true and correct copy of the 2016 Policy is attached as Exh. A.

19.     The 2016 Policy states the First Named Insured shown on the Policy (Mr. Messenger) is responsible for the payment of all premiums.

20.     The Policy provided, among other things, liability insurance coverage for scheduled and hired autos.

21.     The Declarations to the 2016 Policy states an "Estimated Total Premium" due of $144,896.

22.     The estimated premium due is based on the exposures Mr. Messenger advised National Indemnity about prior to the 2016 Policy's inception. Per the express terms of the 2016 Policy, the final premium due is calculated based on actual exposures after the 2016 Policy expires.

23.     The SUPPLEMENTAL COVERAGE DECLARATIONS to the 2016 Policy indicates the following rates for LIABILTY COVERAGE – RATING BASIS, COST OF HIRE for Hired or Borrowed Covered Auto Coverage and Premium as follows: Standard Rate of 18.41 and Hold Harmless Rate of 9.21.

24.     National Indemnity issued Commercial Auto Policy 70 TRB 002031 to Named Insured Mr. Messenger Inc. for the period July 6, 2017 – July 6, 2018, which was cancelled effective April 4, 2018. (the "2017 Policy). A true and correct copy of the 2017 Policy is attached as Exh. B.

25.     The 2017 Policy states the First Named Insured shown on the Policy (Mr. Messenger) is responsible for the payment of all premiums.

26.     The Policy provided, among other things, liability insurance coverage for scheduled and hired autos and physical damage coverage for those indicated scheduled vehicles.

27.     The Declarations to the 2017 Policy states an "Estimated Total Premium" due of $136,996.

28.     The estimated premium due is based on the exposures Mr. Messenger advised National Indemnity about prior to the 2017 Policy's inception.  Per the express terms of the 2017 Policy, the final premium due is calculated based on actual exposures after the 2017 Policy expires.

29.     The SUPPLEMENTAL COVERAGE DECLARATIONS to the 2017 Policy indicates the following rates for LIABILTY COVERAGE – RATING BASIS, COST OF HIRE for Hired or Borrowed Covered Auto Coverage and Premium as follows: Standard Rate of 16.59 and Hold Harmless Rate of 8.30.

30.     The Business Auto Coverage Form, CA 00 01 0310, in both Policies contains the following Section IV BUSINESS AUTO CONDITIONS:

**B. General Conditions**

*          *          *

**6. Premium Audit**

a.   The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

31.     The HIRED AUTOS ENDORSEMENT, form M-5746 (01/2013), in both Policies sets forth the manner for calculating the premium basis for liability coverage for Hired Autos as follows:

> LIABILITY COVERAGE - PREMIUM BASIS:
>
> (1) The premium basis is the "Cost of Hire" multiplied by the rate per cost of hire shown in the DECLARATIONS. "Cost of Hire" is defined as the amount of money you pay or owe to hire, rent lease or borrow HIRED "AUTOS", adjusted to the comparable gross retail rental charge if rented or leased by you at below market rates. You are required to maintain auditable records of your Cost of Hire sufficient to permit us to audit your records and determine the Cost of Hire you have paid or owe during the Policy Period. If you do not maintain auditable records, the minimum premium shall be 25% of the premium charged for all specifically described "autos" insured during the Policy Period, subject to a maximum charge of the annual premium for the highest rated specifically described "auto" insured during the Policy Period.
>
> (2) Where the owner, lessor or lender of the "auto" agrees to indemnify or otherwise hold you harmless unconditionally from liability and to defend you in connection with your use of a HIRED "AUTO" and procures minimum liability insurance equal to the limits of this Policy on your behalf, listing you as an insured or additional insured, the insurance premium due for your use of such "auto" shall be calculated using the Hold Harmless Rate stated for cost of hire shown in the DECLARATIONS (defaults to 15% of the Standard Rate if none displayed) provided that you can produce certificates of insurance certifying coverage and including you as an insured or additional insured AND copies of contracts with each owner, lessor or lender agreeing to indemnify or otherwise hold you harmless unconditionally from liability in connection with the use of such HIRED "AUTOS".

32.     Per the HIRED AUTOS ENDORSEMENT, a HIRED AUTO is defined as "as those 'autos' you lease, hire, rent or borrow under a verbal or written contract, but does not include any 'autos' which are SPECIFICALLY DESCRIBED 'AUTOS' nor does it include any 'autos' which you lease, hire, rent or borrow from any of your employees or partners or members of their households."

6

33.     The TRUCKERS ENDORSEMENT, form CA 23 20 03 10, in both Policies defines "Cost of Hire" to mean "the total cost you incur for the hire of "autos" you don't own...."

## THE AUDITS

34.     In accordance with terms of the 2016 Policy, National Indemnity audited the 2016 Policy on March 22, 2018.

35.     Based on the records and information provided by Mr. Messenger and the "Standard Rate $18.41 per $100 Cost of Fire" set forth in Endorsement No. 1 to the 2016 Policy, National Indemnity calculated the final premium due according to the method set forth in the HIRED AUTOS ENDORSEMENT.

36.     As set forth in the Final Report of Audit sent to Mr. Messenger, the audited premium for the 2016 Policy is $202,462.

37.     After taking into account the premium previously advanced by Mr. Messenger, the amount of additional premium owed National Indemnity is $174,575.

38.     On or about August 22, 2018, Mr. Messenger advised National Indemnity that it disputed the amount of additional premium owed.

39.     In response, National Indemnity explained the basis of the audit premium calculation with specific references to the Policy's conditions, terms and provisions, and requested documentation from Mr. Messenger to support its dispute.

40.     To date, Mr. Messenger has not provided documentation to support its dispute nor has it paid National Indemnity the premium due for the 2016 Policy.

41.     In addition, Mr. Messenger failed to comply with National Indemnity's request for necessary information to audit the 2017 Policy.

42.     Consequently and in accordance with the terms of the 2017 Policy, National Indemnity audited the 2017 Policy based on the 2016 audit findings and the "Standard Rate $16.59" set forth in Endorsement No. 1 to the 2017 Policy.

43.     As set forth in the Final Report of Audit sent to Mr. Messenger, the audited premium for the 2017 Policy is $135,914.

44.     After taking into account the premium previously advanced by Mr. Messenger, the amount of additional premium owed National Indemnity is $117,203.

45.     On June 10, 2019, National Indemnity sent a PAST DUE NOTICE to Mr. Messenger reflecting each of the amounts owed for the Policies, totaling $291,778.

46.      On or about June 27, 2019, Mr. Messenger advised National Indemnity that it disputed the amount of additional premium owed for both Policies.

47.     On July 5, 2019, National Indemnity responded and requested documentation from Mr. Messenger to support its dispute.

48.     Mr. Messenger did not respond to National Indemnity's request so on July 25, 2019, National Indemnity sent Mr. Messenger a FINAL NOTICE reflecting $291,778 due National Indemnity for unpaid premium.

49.     To date, and despite multiple communications by National Indemnity, Mr. Messenger has refused to pay National Indemnity premium due and owning for the Policies, thereby breaching the terms of the Policies.

### COUNT I -BREACH OF CONTRACT

50.     National Indemnity reasserts and incorporates by reference Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     Per the express terms of the Policies, Mr. Messenger is obligated to pay all premium due.

52.     Mr. Messenger has breached its obligations under the Policies by refusing to pay National Indemnity $174,575 for additional premium due and owing for the 2016 Policy.  Mr. Messenger's refusal to pay the premium constitutes a material breach of the 2016 Policy.

53.     Mr. Messenger has breached its obligations under the Policies by refusing to pay National Indemnity $117,203 for additional premium due and owing for the 2017 Policy.  Mr. Messenger's refusal to pay the premium constitutes a material breach of the 2017 Policy.

54.     National Indemnity has been damaged as a direct result of Mr. Messenger's failure to pay the premium due.

WHEREFORE, National Indemnity respectfully prays as follows:

(1)     That the Court enter an order finding that Mr. Messenger has breached the terms of the Policies;

(2)     That the Court award National Indemnity actual damages in the amount of $291,778;

(3)     That this Court award National Indemnity its costs and reasonable and necessary attorneys' fees and expenses incurred in prosecuting this breach of contract claim; and

(4)     Prejudgment and post-judgment interest at the maximum rates permitted by Rhode Island law; and

(5)     That National Indemnity be awarded such other and further relief that this Court deems just and proper.

Dated: December 31, 2020                    Respectfully submitted,


                                            PLAINTIFF
                                            NATIONAL INDEMNITY COMPANY
                                            By its attorneys,


                                            /s/ David W. Zizik
                                            David W. Zizik (RI #2323)
                                            Sulloway & Hollis, P.L.L.C.
                                            40 Westminster Street, Suite 201
                                            Providence, RI 02903
                                            Phone: (401) 265-5151
                                            Fax: (781) 658-2532
                                            dzizik@sulloway.com


                                            *Pro Hac Vice* Motion To Be Filed:

                                            /s/ Wendy Enerson
                                            Wendy N. Enerson
                                            Cozen O'Connor
                                            123 North Wacker Drive, Suite 1800
                                            Chicago, IL 60606
                                            Phone: (312) 382-3162
                                            wenerson@cozen.com